**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:04 PM May 22, 2019**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| TIFFINY JUANITA KINZER, | ) | CASE NO. 18-60502 |
| | ) | |
| Debtor. | ) | ADV. NO. 18-6011 |
| _____ | ) | |
| BENJAMIN W. SMITH, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| TIFFINY JUANITA KINZER, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Now before the court is Plaintiff's Second Amended Complaint, filed February 13, 2019. The court held a trial on this matter on May 13, 2019.

1

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the court has authority to issue final entries. Pursuant to 11 U.S.C. § 1409, venue in this court is proper.

This memorandum constitutes the court's findings of fact and conclusion of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this memorandum, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, the court finds that insofar as any debt is owed to the Plaintiff by Defendant, that debt is dischargeable.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTS

Benjamin Smith ("Plaintiff") and Tiffiny Kinzer ("Defendant") were in a relationship for roughly a year and a half, during a time period from 2015 to 2017. Defendant was married but estranged from her husband, and moved in with Plaintiff in Texas in 2015. During their relationship, the need arose to purchase two vehicles: a Ford F150 for Plaintiff's daily use, and eventually a Heartland Travel Trailer for Plaintiff to use in conjunction with a work opportunity. As Plaintiff was unable to get credit, Defendant bought the vehicles, and both of them were titled to her. The pair decided that Plaintiff would make the payments on the vehicles, since they were intended primarily for his use.

The relationship turned acrimonious, and Plaintiff and Defendant separated in early August of 2016. Later that month, Defendant drafted a letter declaring that the vehicles' titles would be signed over to Plaintiff after the loans were paid in full. The two agreed that Plaintiff would continue to make the payments on the two vehicles. In 2017, Defendant provided Plaintiff with the credentials necessary to make online bill payments, but Plaintiff claims that he could not figure out how to do so. They then decided to create a Quickpay account to simplify the process: Plaintiff would pay into it, and Defendant would withdraw from it to make the payments herself. It is this financial arrangement that facilitated Plaintiff's claim. He alleges that, while he paid over $20,000 into the account, Defendant did not apply those funds to the payments as agreed. Defendant vehemently denied both the stated amount and the alleged conduct, and provided documentation not only showing that Plaintiff had only paid her a total of $4,090.14, but also itemizing the charges made on the account.

## DISCUSSION

Plaintiff in this case claims that the payments made to Defendant constitute a debt owed to him, and that said debt falls under the fraud exception to dischargeability. A "debt" is statutorily defined as liability on a claim, which is in turn defined as a right to payment. 11 U.S.C. §§ 101(12), 101(5). Per the Supreme Court, a right to payment is "nothing more nor less than an enforceable obligation." Cohen v. De La Cruz, 523 U.S. 213, 219 (1998), quoting

Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 559 (1990).

As a threshold matter, the court does not see how the payments made to Defendant – which, it should be noted, in actuality add up to barely one-fifth of the amount set forth in the second amended complaint – constitute a debt owed to Plaintiff. After witnessing her testimony during the evidentiary hearing, the court finds Defendant credible, and with no conflicting evidence having been presented, accepts her itemization of both Plaintiff's and her own payments as accurate. *See* Plaintiff's Exhibit 13. According to this itemization, the money that Plaintiff paid into the Quickpay account was spent on a combination of vehicle payments and assorted other expenses, arising either from the vehicles or from Plaintiff himself. These miscellaneous expenses include Plaintiff's own phone bill, insurance for the vehicles, and the tolls Plaintiff accrued while driving. Defendant also testified that some of these expenses were paid with her own money, not solely money received from Plaintiff. Plaintiff has offered no evidence to corroborate his claim that his own funds were used outside of the agreed-upon purpose, and certainly has not shown that Defendant improperly absconded with $20,000 of his money. There is no debt, therefore it is not necessary for the court to wade into the "palimony" argument raised by Defendant.

However, in the interest of thoroughness, the court will proceed with the nondischargeability analysis regarding the supposed debt.

Under the Bankruptcy Code, a debt "for money, property, services, or an extension, renewal, or refinancing of credit" will not be discharged, to the extent that it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C § 523(a)(2)(A). Without limitation, the statutory language "makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt." De La Cruz, supra, at 219.

The Sixth Circuit has found that the creditor must prove the following elements to establish nondischargeability under this section:

1) The debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
2) The debtor intended to deceive the creditor;
3) The creditor justifiably relied on the false representation; and
4) Its reliance was the proximate cause of loss.

Brentar v. Nishnic (In re Nishnic), 2006 Bankr. LEXIS 4183 (Bankr. N.D. Ohio 2006), at *10-11, quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted). The party seeking to hold a debt nondischargeable must prove, by a preponderance of the evidence, that all these elements have been met. In re Mayerson, 254 B.R. 407, 411 (Bankr. N.D. Ohio 2000). The court finds that Plaintiff has not carried this burden.

In his complaint, Plaintiff alleges that Defendant represented that she would pay for the vehicles, but that she "failed and refused to pay the loans." Second Amend. Complaint, p. 2.

3

Even if the court were to accept this version of events as accurate, a lapse in payment after months of performance might perhaps constitute a breach of the initial agreement, but it certainly does not retroactively render any part of the agreement a material misrepresentation, nor is it clear proof of Defendant's intent when the agreement was made.   Considering that Defendant *did* make several payments, it strains credulity to argue that all along, she actually intended to take the money and run.   It also does not appear that Defendant simply stopped making payments out of spite.   Plaintiff testified during the hearing that he stopped sending money to Defendant in February of 2018; she filed for bankruptcy the following month.   There is simply no support on this record for the claim that Defendant plainly, by a preponderance of the evidence, intended to use their arrangement to defraud the Plaintiff.   In fact, there is ample evidence that the money was applied as agreed, and that the cessation of payment was attributable instead to a change in circumstance.

	Plaintiff has also failed to show that his reliance on Defendant's prior statements or actions constitutes the proximate cause of any loss on his part.   At trial, Plaintiff readily admitted, more than once, that he had previously tried to pay the bills online himself, but found the process too confusing.   Defendant had even provided him with the necessary credentials to do so.   While difficulty navigating our current technology may be unfortunate, the court is not convinced of Plaintiff's helplessness in this area, as there are other ways he could have bridged the gap, such as by seeking assistance with setting up accounts of his own.   Plaintiff decided not to pursue an alternative method of payment, or to seek help from anyone else.   Defendant's decision to enter into bankruptcy and attempt to financially disentangle herself from a former boyfriend did not render Plaintiff incompetent to make the payments on his own.   He could have continued the payments himself at any time if he wished, and there would have been no risk of repossession of the vehicles.

	Plaintiff has failed to carry any part of his burden.   Even should the court accept his allegation that Defendant is indebted to him, he has not shown that such debt should be deemed nondischargeable for fraud.   Judgment will be entered in favor of the Defendant by separate order.


				#	#	#


**Service List:**

**Benjamin W. Smith**
2887 Johnsville Road
Hamilton, GA 31811

**Robert Goldberger**
10 W. Newlon Place
Mansfield, OH 44902

**Tiffiny Juanita Kinzer**
122 Fortney Avenue
Galion, OH 44833

**Edwin H. Breyfogle**
108 Third Street N.E.
Massillon, OH 44646

5

18-06011-rk    Doc 35    FILED 05/22/19    ENTERED 05/22/19 16:13:32    Page 5 of 5